## JOHN G. COSTER v. The MONROE MANUFACTURING COMPANY.

| 2 | 467 |
|---|---|
| 56 | 287 |
| 2 | 467 |
| 60 | 393 |

Where land is conveyed with covenant of warranty, and the purchasers are evicted from part of the premises, or a judgment in ejectment is recovered against them; on a bill by the vendor for a foreclosure of a mortgage given for a part of the purchase money, equity will permit the purchasers, or those claiming under them, to avail themselves of the failure of title as a defence against a recovery upon the mortgage; and will either stay the proceedings upon the mortgage until the damages arising from the failure of title are ascertained by a suit at law, or will direct an issue, or a reference to a master, to ascertain the damages, before decreeing a recovery upon the mortgage. As a general rule, it will be referred to a master to ascertain the damages, unless the complainant requires a trial at law.

But if the bill for foreclosure be filed by an assignee of the mortgage without notice, will equity, under such circumstances, interfere ?—Quere.

A court of equity will, to effectuate justice, settle unliquidated damages.

A covenant of warranty by one of several grantors, made at the same time with the original deed, and endorsed upon it, will receive the same construction as if made in the body of the deed.

[Coster v. Monroe Manufacturing Co.]

An actual eviction is not necessary to entitle the defendant to his damages on the covenant, provided there has been a trial and judgment in ejectment, though the court will not act upon a mere allegation that the title is defective.

Where one of several grantors, holding one hundred and forty-nine shares out of six hundred and eighty-two, in which the premises are held, covenants that he is the owner of the said one hundred and forty-nine shares, and that the same are free of incumbrances, and that the grantor will warrant and defend the title to the bargained premises *to the extent of said shares and no further*, and the title to the premises partially fails, the vendor is liable on his covenant only in proportion to the number of shares held by him.

In the construction of covenants, it is a settled rule both at law and in equity, to look to the evident meaning of the parties.

THE bill in this cause was filed for the foreclosure of a mortgage given by Francis Mann and wife and John W. Berry and wife to the complainant, bearing date on the first day of February, eighteen hundred and thirty-one, to secure the payment of twenty thousand dollars.

The answer of the defendants, " The Monroe Manufacturing company," admits the bond and mortgage as stated in the complainant's bill; but states, that the mortgaged premises were sold and conveyed by the complainant and others to Francis Mann and John W. Berry, by deed bearing even date with the complainant's mortgage, for the consideration of twenty-five thousand dollars, and that the bond and mortgage mentioned in the complainant's bill were given to secure part of the purchase money of said premises : that the premises, prior to the execution of the deed, were declared by the three owners thereof to be divided into six hundred and eighty-two shares, and that at the time of the said sale complainant held one hundred and forty-nine shares thereof, and was entitled to a like proportion of the consideration money given for the purchase of said premises, which proportion amounted to about five thousand four hundred and sixty dollars ; that on the same day, and at the time of the execution of the deed to Mann and Berry, and before the delivery of the deed or of the bond and mortgage, the complainant duly executed, under his hand and seal, a special covenant of warranty of the title to

said premises, endorsed on the deed in the following words:— —
" Know all men by these presents, that I, John G. Coster, one
" of the grantors within named, do hereby, for myself, my heirs,
" executors, administrators and assigns, in respect of my propor-
" tion, being one hundred and forty-nine shares out of the six
" hundred and eighty-two shares within mentioned, and of the
" like proportion of the consideration monies within mentioned,
" but not in respect of the residue of said shares or of the said
" consideration money, covenant and agree with the within
" named Francis Mann and John W. Berry, their heirs and as-
" signs, that I am the owner of the said one hundred and forty-
" nine shares, and have good right to sell the same in manner
" within mentioned, and that the same are free of all incum-
" brances, and that I will warrant and defend the title to the
" within premises to the extent of said shares and no further, to
" said Francis Mann and John W. Berry, their heirs and as-
" signs."    Insists, that the covenant was a part of the transac-
tion of sale and purchase, that it was intended to be and should
be considered as a part of the said deed of conveyance.    States,
that by deed, dated June 23d, 1834, John W. Berry and wife
conveyed to James N. Mathews the undivided half part of the
premises, machinery, &c. as described in complainant's bill, and
that by deed dated September 20th, 1834, Francis Mann and
wife conveyed to the said James N. Mathews his undivided half
part of the said premises and machinery, &c. subject to the com-
plainant's mortgage : that the said deed from Mann to Mathews
contained covenants of quiet possession, against incumbrances of
every description excepting complainant's mortgage, and of
general warranty : that by means of said conveyances, Mathews
became possessed of the entire premises, with the machinery
thereon, and that he also received the title deed and covenant
executed by complainant.    States, that by deed dated August
22d, 1835, Mathews, for the consideration of thirty thousand
dollars, conveyed the premises, with the improvements, to Samuel
G. Wheeler, subject to complainant's mortgage, which was ac-
counted as part of the consideration money, and that Mathews

passed to Wheeler the title deeds and the aforesaid covenant; and that the deed from Mathews to Wheeler contained full covenants of warranty of title. That when Wheeler purchased the premises, the mills and buildings were out of repair; that he expended large sums of money in repairing and painting the same, and in purchasing and erecting machinery : that he erected another building upon the premises, which he also stocked with machinery, and that by means of his improvements the property was greatly enhanced in value. That the " Monroe Manufacturing company" is an incorporation created by the legislature of New-Jersey, for manufacturing cotton and other articles ; that their location and seat of business is in Paterson ; that for the purpose of carrying on their business with greater advantage, they purchased from Samuel G. Wheeler the property covered by complainant's mortgage.: that Wheeler and wife, by deed containing full covenants, dated 24th March, 1838, for the consideration of sixty thousand dollars, conveyed to said company the same premises set forth and described in complainant's mortgage and bill, together with the mills and improvements thereon : that the premises, at the time of the last mentioned purchase, were understood to be subject to complainant's mortgage, and that the company were to pay off and satisfy the same : that the deed from Wheeler to the company contained covenants of seizin and warranty against incumbrances, and that all the title papers and the covenant of complainant were handed over to the company. That the title of complainant and the other original grantors, was not good for all the premises conveyed by them to Berry and Mann and embraced in complainant's mortgage ; but that their title to a part thereof, upon which Wheeler had erected a building and made valuable improvements, (a particular description whereof is contained in the answer,) was wholly defective : that while the premises were possessed by Mathews, an action of trespass and ejectment was instituted against him in the supreme court of New-Jersey, on the demise of " the Society for establishing useful Manufactures," for that part of the mortgaged premises described in the answer : that although the suit was pending

[Coster v. Monroe Manufacturing Co.]

against Mathews at the time of the purchase by the company from Wheeler, they were induced by the inquiries he had made respecting the title, and the opinions obtained from his counsel, to believe that his title, derived originally from complainant and others, was perfect and valid for the whole premises, and that they purchased under such belief. States, that after Wheeler purchased the premises and entered into possession, and during the pendency of the said action of ejectment, he had several interviews upon the subject with complainant and his counsel; that he gave complainant notice of the suit, and required him to defend the same; that complainant never denied his liability upon his covenant, but always promised Wheeler to have the matter arranged: that complainant's son and counsel visited Paterson and had one or more interviews with the governor of said society upon the subject: that upon complainant's request the trial of the cause was once or oftener postponed, on account of the absence of one of the grantors from the country, upon complainant's allegation that on his return home the matter should be settled to Wheeler's satisfaction. That once, when the cause was noticed for trial, a written notice informing him of the time and place was previously left at complainant's dwelling house in New-York, requesting him to defend the title to the property against the claim of the said society: that complainant failed to attend to the cause, and that the plaintiff obtained judgment in his said action for the recovery of said premises; that subsequently a writ of possession was issued, directing the sheriff to give the plaintiff possession of the ground and premises recovered by him: that the company, having previously purchased the whole premises, including the part for which judgment was recovered by the said society, and being informed that the sheriff was about to dispossess them of that part thereof, negociated with the society and purchased for five thousand dollars the said piece of land and premises; which sum was the consideration for the value of the rights of said society in the land, not embracing the improvements made thereon by the company and Wheeler; and that a conveyance was executed therefor on the 13th of August, 1838,

and the money paid. Insists, that an allowance by way of set-off, with interest, should be made from the mortgage debt, equal to the proportion which that part of the premises bore to the whole in respect to the consideration paid to complainant and others upon the original purchase from them, including the amount secured by the mortgage. Charges, that the premises which were defective in title, and for which a recovery was obtained upon a paramount title, constituted a large portion of the whole value of the property conveyed by complainant and others to Berry and Mann; that the relative value thereof to the residue of the premises, is at least one fifth of the whole, and that the share of the consideration money which should be refunded, with interest, on account of the defect in the title, will greatly exceed the amount paid to the society, and the interest thereon. States, that Berry and Mathews have left this state, and as they believe do not reside in the United States, and that Mann is not a resident of New-Jersey; that Wheeler has become embarrassed, and will be wholly unable to respond to the company on his covenant for any part of their damages in case the whole mortgage debt should be recovered. Insists that in an action at law, complainant would be liable to the company, as assignees of Berry and Mann, upon his covenant of warranty of title, to the extent of the amount of his then interest in the premises, and the like proportion of the whole consideration of the purchase from him and others; but inasmuch as complainant resides out of this state, and a prosecution upon the said covenant in a foreign state would be attended with embarrassments, the company are willing to take five thousand dollars, with interest, the consideration given to the "Society for establishing useful Manufactures" for their conveyance; or to have that much allowed as a credit on the mortgage debt in discharge of the said covenant of complainant; but they insist that in equity an allowance by way of set-off or deduction ought to be made from the mortgage debt of the amount of five thousand dollars, paid to the society, with interest, or a deduction of a rateable proportion of said amount.

The cause came on for hearing upon the bill, answer, and replication.

*E. Vanarsdale*, for complainant.

*E. B. D. Ogden*, for defendant.

Cases cited by the complainant's counsel. 2 *John. Chan. R.* 523; 2 *Brown's Parl. Cas.* 134, 136; 4 *Kent's Com.* 475; 2 *Harrison*, 309; *Jeremy's Eq.* 486; *Levinz*, 46, 47; *Dyer*, 240; 1 *Wendell*, 228; 2 *Johns. Cas.* 203; 2 *Bos. and Pull.* 13; 7 *John. R.* 380; 2 *Mass.* 437; 3 *Term Rep.* 393, 678; 1 *Hen. Bl.* 562.

THE CHANCELLOR. This bill is filed on a mortgage made by Francis Mann and John W. Berry to the complainant, to secure the payment of twenty thousand dollars. The validity of the mortgage is not questioned, but the defendant claims to have a deduction from its amount for the reasons stated in the answer. By the answer, which is sustained by the proofs, it seems that the mortgage covers what was formerly known as the Beaver woollen factory, but latterly the Rutgers cotton factory mills and buildings, and lot of land whereon they stand, in the town of Paterson. This mill, being owned by several persons, was divided by them into shares, and the several parties holding these shares conveyed the property to Mann and Berry, who, as part of the consideration, executed the mortgage to the complainant. The property has been conveyed in the usual and regular manner, by Mann and Berry, through several parties, to the defendants, "The Monroe Manufacturing company," which company now has the equity of redemption in the premises. The deed to Mann and Berry bears date the first day of February, 1831, (the same day with the complainant's bond and mortgage,) and is made by the executors of Henry Rutgers, the executors of William Few, Ichabod Prall and wife, Jeromus Johnson, and the

complainant and wife, as parties of the first part. In a recital in the deed, the shares are stated to be six hundred and eighty-two, of which, at the time of the conveyance, the estate of Henry Rutgers held one hundred and sixty-four, the estate of William Few one hundred and thirty-five, Ichabod Prall and wife fifty-six, Jeromus Johnson one hundred and seventy-eight, and the complainant one hundred and forty-nine. The interest of these parties was distinct, and no way dependent on each other any farther than all share-holders in a joint stock company. Each had an interest to the amount of his shares, and no more. The deed purports and was no doubt made upon the consideration of twenty-five thousand dollars, of which sum the complainant's mortgage constituted twenty thousand dollars, and the remaining five thousand dollars was either paid in cash or otherwise secured. The covenants in the body of the deed are only against the acts of the grantors, for quiet enjoyment and for further assurances; but there is a separate and independent covenant on the back of the deed for a warranty of title, made by the complainant alone. For a part of the lot conveyed in this deed, the title of the grantors turns out to be defective, and an action of ejectment has been brought, the cause tried, and verdict and judgment in favor of the lessor against the title of the grantors in the deed. The execution was issued and about to be executed for the part recovered in the suit, when the defendants, rather than be dispossessed, paid the Society for establishing useful Manufactures, (the plaintiffs in ejectment,) five thousand dollars, and took their title for the portion of the premises so declared to belong to them. The defendants now insist that they are entitled to have an abatement on the amount due the complainant on his mortgage, of the damages which they have sustained by the recovery of the Society for establishing useful Manufactures, by virtue of the covenant entered into by the complainant on the back of the deed.

This statement of the case will present two questions: 1st, Whether the defendants can avail themselves of this defence in this action? and if so, then, 2d, To what extent is the com-

[Coster v. Monroe Manufacturing Co.]

plainant bound by his covenant; or, in other words, what is its true construction and meaning?

1. Upon the first question, I am, after careful consideration, clearly of opinion, that it is the bounden duty of this court to take notice of a defence of this character, and either stay the suit on the mortgage until the damages are ascertained by a suit at law, or by directing an issue to settle the liability, or by a reference to a master. To allow the holder of a mortgage to go on and under a decree to establish his claim to his whole demand, when the defendant shows by the record of recovery against him that a part of the very land for which he gave the mortgage did not belong to the mortgagee at the time he conveyed, and that too against the express covenant of the mortgagee, would, I think, violate that sound principle of the court which requires that complete justice be done to all parties, and not by halves. Take this very case, where the title of a part only of the property turns out to be defective. A decree for the whole amount might take from the defendant that portion of the property for which he has good title, when, if the abatement was made for his loss, it might be in his power to pay off the balance remaining against him, or make such arrangement as to save his property; and all this embarrassment created by the act of the mortgagee in selling property for which he had no title. There is another obvious propriety in this course. The mortgagee may be unable to pay the damages at the end of a suit on his covenant, and if so, he gets the whole of his money on the mortgage, and the entire loss is visited on the purchaser. This must be understood as applying only to a case where the original parties are before the court; what view should be taken if the mortgage is assigned to other hands, need not here be considered, for the original mortgagee and covenantor is the party now before the court as complainant. I confess I have not been able to find this subject considered in the cases as I had expected, and yet it appears to me so obviously correct in principle, that I cannot doubt its propriety. The great objection is the difficulty in this court undertaking to settle

unliquidated damages. I know this is a difficulty, and yet in some cases a court of equity will, to effectuate justice, settle damages which are unliquidated. But if this obstacle should be deemed insuperable, still it would constitute no sound objection to the court staying the complainant's recovery on his mortgage until a reasonable opportunity be afforded the defendant to ascertain his damages at law, and then allow that amount to be offset. Which of these courses, to ascertain the damages under the covenant, should be pursued, might depend on the peculiar circumstances attending the case, but it would seem to me it should as a general rule be referred to a master, unless the complainant requires a trial at law. If the defendant claims the allowance here, he should be content with the forms of proceeding in this court, which is by reference to a master. To settle the damages, and thus close the whole controversy in one action, accords well with the familiar principle of a court of equity; of preventing a multiplicity of suits.

The fear expressed by the complainant's counsel, that his client might not be protected by a decision here, but be called upon again in a court of law, and by the original parties to the covenant, cannot, I think, have any reasonable foundation. This is a covenant to them, their heirs and assigns; it was made on the same day with, and on the back of the deed, and must receive the same construction as if made in the body of the deed; and I can view it only as a covenant running with the land *to the extent of the complainant's interest in that land.* The property having been conveyed by regular and lawful conveyances *to the present defendants, they alone are entitled* to the benefit of this covenant; they alone are the party injured; and having once submitted themselves to the jurisdiction of this court, they cannot, upon any principle, seek for further allowance at the hands of another.

An actual eviction I do not deem necessary to give a right to the defendant to his damages on his covenant, provided there has been a trial and judgment in ejectment. This, it may be fairly

inferred, was the chancellor's opinion in the case cited by the counsel for the complainant from 2 *John. Chan.* 524. In that case a purchaser bought under covenants of warranty, and gave his bond and mortgage for a part of the purchase money. Afterwards a suit was brought at law to recover the money on the bond, and an injunction obtained restraining that suit on an allegation that the title to the land conveyed turned out to be defective. The chancellor dissolved the injunction, saying, that before a court of equity could interfere, "a previous eviction or *trial at law* is as a general rule indispensable." Here has been a trial at law, and no doubt remains on that part of the case. It has been repeatedly held, that the court will not act upon a mere allegation that a title is defective, it must first be established at law; and where that is done, and the proof of the proceedings properly made, this court will take notice of them and act accordingly. I refer also, as bearing upon this subject, to *Bumpus* v. *Platner*, 1 *John. Chan.* 213, and to an anonymous case in 2 *Chan. Cases*, 19. As between the original parties, then, where a title is shown to be defective in part by a recovery at law, the court will allow the defendant an opportunity to offset the amount of his damages sustained under a covenant, before decreeing a sale of the mortgaged premises under the mortgage.

2. This view leads me, necessarily, to consider the true construction of the covenant entered into by the complainant. The important part of the covenant is as follows: "1, John G. Coster, one of the grantors, in respect of my proportion, being one hundred and forty-nine shares out of the six hundred and eighty-two shares, and of the like proportion of the consideration monies, but not in respect of the residue of said shares or of the said consideration money, covenant and agree with Francis Mann and John W. Berry, their heirs and assigns, that I am the owner of the said one hundred and forty-nine shares, and have good right to sell the same in manner within mentioned, and that the same are free of all incumbrances, and that I will warrant and defend

the title to the within premises *to the extent of said shares and no further*." The defendants insist that the words in this cove-nant, " to the extent of said shares," although the title to a part only of the premises proved defective, makes the complainant liable to the full amount of his consideration money, and which in this case would cover the whole loss. Such is not, in my opinion, the true construction of this instrument. This would-make the complainant liable beyond his own shares ; he would clearly answer for the shares of others, when he declares ex-pressly that he covenants only " to the extent of his shares." He does not mean to say any thing more, than that he will protect the purchasers so far as his shares are interested. Had the title to the entire property failed, he must have answered to the full extent, but as it failed partially, he must answer only partially. This is the construction, I think, upon the fair literal interpreta-tion of the words used. But we are not left to so narrow a rule in arriving at the intent of covenants, for it is a settled rule, both at law and in equity, to look to the evident meaning of the par-ties. The intention of the parties is to be carried into effect : *Platt's Treatise on Covenants*, 136. That writer says, very properly, " the intention is not to be collected from the language of a single clause in a deed, but from the entire context, and it is immaterial in what part of a deed any particular covenant may be inserted, for exposition must be upon the whole instru-ment, *ex antecedentibus et consequentibus*, and according to the reasonable sense and construction of the words." The com-plainant did not profess to own beyond a certain number of shares, and his covenant was that he owned those shares, and had good right to sell them, that they were free of incumbran-ces, and to the extent of those shares he would warrant and defend the title of the purchaser. There was no reason why he should go beyond this. There is nothing in the case to show that he had the slightest interest in the shares of the other grantors, and why should he enter into any obligation as to them ? The fact that the mortgage was made to him for *twenty*

thousand dollars of the purchase money, cannot vary the case. That was doubtless the subject of some arrangement between the parties, and can have no bearing upon this question. My attention was properly called, by the counsel of the complainant, to the phraseology used in the covenants in the body of the deed, to show that the grantors had distinct and independent interests, and never intended to be bound in any way for each other. In the commencement of the covenanting part of the deed, the language is, "And the said parties of the first part hereby severally, each for himself and his heirs, &c., and his acts and not jointly nor one for the other, or heirs, &c. of the other, in their respective rights and character, and in regard to their respective proportions, aforesaid, and not one for the proportion of the other, covenant, &c." Taking this language with that in the separate covenant made by the complainant at the same time on the back of the deed, which still goes on to state his proportionate share, and is confined to that, there is no room, in my judgment, to doubt what was the intent and meaning of the parties. If four men each own a quarter, and they covenant separately for their respective shares, if the whole title is defective, they must respond to the full amount, but if only a part of the property is lost, they are to answer for no more than their share in the part so lost. What, then, was the share of the complainant in that part of the property of which the title proved defective? The value being ascertained by a comparison of the part so lost to the purchaser, with the entire property purchased, and dividing such ascertained value into six hundred and eighty-two shares, the complainant is bound for one hundred and forty-nine of those shares, and no more. In making this estimate, while the amount paid by the defendant for this land a second time is proper evidence to be considered by the master, it is no way conclusive upon his judgment. He will be at liberty to vary it if he shall think it right so to do.

I shall refer the case to a master, to ascertain the amount of damages which the complainant is answerable for to the de-

[Coster v. Monroe Manufacturing Co.]

fendant on his covenant, in conformity with the construction here given to that instrument, and to report the amount due the complainant on his bond and mortgage, after deducting such amount therefrom, and that he take the evidence down in writing, and send up the same to this court.

Order of reference.