On or about July 1st, 1918, Floyd E. Bellisfield became indebted to Alfred G. Holcombe and Charles H. Holcombe, partners, trading as Holcombe Brothers, on a promissory note for $2,700, due and payable to Elizabeth B. Holcombe, wife of Charles H. Holcombe; and Alfred G. Holcombe served a notice upon Bellisfield that he should not pay the money due on the note to Elizabeth B. Holcombe, as it belonged and was his property; and likewise, Elizabeth B. Holcombe notified Bellisfield not to pay the same to Alfred G. Holcombe, but to her. Whereupon, Bellisfield filed a bill of interpleader herein, and an interlocutory decree was afterwards made, wherein it was adjudged and decreed that the bill of interpleader was properly brought, and that the complainant should deposit in this court the sum of $2,700, with interest, and that upon such deposit being made he should be dismissed from the further prosecution of the suit with his costs to be taxed, including a counsel fee to be paid out of the fund; and that he should be released and discharged from all liability to all the defendants in the suit by reason of said fund; and the defendants were decreed to interplead, settle and adjust their several claims, demands and controversy as between themselves.
For the better understanding of this case it becomes necessary at this point to make a statement of the agreement attached to the bill of complaint. It purports to be one made between Emma E. Holcombe of the first part, and Alfred G. Holcombe and Charles H. Holcombe, individually and as partners trading as Holcombe Brothers, of the second part. It is identical in language and signatures with the agreement put in evidence by the defendant, Elizabeth B. *Page 22 
Holcombe, except that her signature, instead of that of Emma E. Holcombe, appears thereon. It appears that there were two agreements signed and exchanged, each wife signing one that went into the possession of the other, or doubtless were so intended. Both are to be read together, as they are really one.
The agreement, which is dated the (blank) day of July, 1906, in its entirety, saving the statement of the parties and date of the formal execution, is as follows:
"Whereas, the said Alfred G. Holcombe and Charles H. Holcombe did on the thirtieth day of June, in the year nineteen hundred and six, enter into a contract of insurance with the Provident Life and Trust Company of Philadelphia, whereby said company did covenant and bind itself to pay, at its office in the city of Philadelphia, the sum of seven thousand dollars to Alfred G. Holcombe and Charles H. Holcombe, trading under the firm name of Holcombe Brothers, or to their executors, administrators or assigns, upon the thirtieth day of the sixth month, nineteen hundred and thirty-one, provided Alfred G. Holcombe and Charles H. Holcombe shall both be living at that date; but in the event of the decease of the said Alfred G. Holcombe before that date, said Charles H. Holcombe surviving, then to pay at its office the said sum insured to Emma Holcombe, wife of said Alfred G. Holcombe, if living, otherwise to Alfred G. Holcombe's executors, administrators or assigns, or in the event of the decease of the said Charles H. Holcombe before that date, the said Alfred G. Holcombe surviving, then to pay at its office aforesaid the said sum insured to Elizabeth B. Holcombe, wife of the said Charles H. Holcombe, if living, otherwise, to Charles H. Holcombe's executors, administrators or assigns.
"And whereas the said Alfred G. Holcombe and Charles H. Holcombe have entered into said contract of insurance with the intent and purpose of providing in case of the death of either of them for their said respective wives, should they survive them, and with the further purpose and intent that said contract of insurance for the benefit of their said respective wives shall be in lieu of any and all claim in and to the business, property or good will now belonging, or which hereafter may belong to the said party of the second part, trading under the name of Holcombe Brothers, which their said respective wives may claim or be entitled to subsequent to the death of the said Charles H. Holcombe or Alfred G. Holcombe, or either of them.
"Now, therefore, in consideration of the sum of one dollar, in hand paid by the said party of the second part to the said party of the first part, the receipt whereof is hereby acknowledged, and in consideration further of the keeping in force of the said policy of insurance hereinbefore referred to by the said party of the second part, this agreement witnesseth: *Page 23 
"(1) That at or upon the death of the said Charles H. Holcombe an account shall be stated of the stock on hand, book accounts, credits, debts and obligations of the said firm of Holcombe Brothers, as of the date of said death, and that any sum remaining to the credit of the said Charles H. Holcombe, as shown by said account, shall thereupon be paid to the said party of the first part within three months from the date of said death.
"(2) That the said party of the first part hereby assigns, releases and relinquishes to the said Alfred G. Holcombe any and all claim or interest in and to the said business, assets and good will of the said firm or partnership of Holcombe Brothers, accruing to said partnership subsequent to the death of the said Charles H. Holcombe."
Mrs. Elizabeth B. Holcombe has filed a statement of her claim to the fund in question under the rule, and Alfred G. Holcombe has filed an answer to the bill of complaint, in which he states his claim.
Mrs. Holcombe says that her rights are not founded upon the contract annexed to the bill, but upon a complementary contract dated July ____, 1906, in which she is party of the first part and Charles H. Holcombe, her husband, and his brother, Alfred G. Holcombe, are party of the second part; that the Holcombe Brothers, partners, were engaged in the business of druggists, conducting two stores in the city of Trenton; that they owned equally the partnership assets, consisting of fixtures, good will, stock in trade, book accounts and credits, and shared the profits equally; that her husband, Charles H. Holcombe, died March 5th, 1919, whereupon she became entitled to have an account stated of the partnership, as of the date of his death, and to have paid to her within three months of such death the sum remaining in the account to the credit of the decedent; that she believes an accounting would disclose to the credit of her deceased husband, at the time of his death, an amount which, with interest, would equal or exceed the sum deposited in this court; wherefore, she claims to be entitled to the entire fund. She claims that she is entitled to affirmative relief against Alfred G. Holcombe, including stock on hand, book accounts, credits, debts and obligations of the partnership, and the Bellisfield note, as of the date of the death of her husband, and to an order that out of the sum deposited she should be paid the amount *Page 24 
shown in the accounting to stand to the credit of her husband at the date of his death, plus interest; that it is under the provisions of paragraph 1 of the agreement that she is entitled to such an accounting and payment; that the second preambulatory paragraph of the contract, providing that the insurance received by her was to be in lieu of any claim to the business, property or good will of the partnership, does not refer to the items of property specifically mentioned in paragraph of the agreement, namely, stock on hand, book accounts and credits for which paragraph 1 of the operative part particularly requires an accounting and payment. Attached to this statement of claim is a copy of the identical agreement offered in evidence by the defendant Elizabeth B. Holcombe, which, as shown, is identical with the language of the agreement contained in the contract attached to the bill of complaint.
The defendant Alfred G. Holcombe, in his answer, says that the proper and true intent of the agreement is shown in its preamble, and that the portion following is incomplete in that, while provision is made therein as to what should be done with the insurance arising upon the policy should Alfred G. Holcombe die prior to Charles H. Holcombe, there is no reciprocal clause showing what should be done therewith if Charles should die prior to Alfred, and that, therefore, the agreement not having been completed, in so far as the terms following the preamble are concerned, the preamble should be used to show what the true intent and purpose was; and as the first recital is that in the event of the decease of Alfred, Charles surviving, then to pay the sum insured to Emma E., wife of Alfred, if living, otherwise to Alfred's executors, administrators or assigns, or, in the event of the decease of Charles before that date, Alfred surviving, then to pay the sum insured to Elizabeth, wife of Charles, if living, otherwise to Charles' executors, administrators or assigns, and by thus incorporating in the agreement that provision, the same is reciprocal and disposes of the insurance money in a fair and equitable way, and releases all the other property of the partnership to the surviving partner; that the *Page 25 
second recital stated that Alfred and Charles entered into the contract of insurance, mentioned in the first recital, with the intent and purpose of providing, in case of the death of either of them, for the widow of such deceased, and with the further purpose and intent that the payment of the sum mentioned in the contract of insurance to such widow would be in lieu of any and all claim which the widow might have in and to the business, assets, property and good will belonging to the firm of Holcombe Brothers, which such widow would be entitled to receive from the partnership after the death of either Charles or Alfred; that Charles having died, his widow, Elizabeth, has received, by virtue of the death of Charles, all the insurance money which under the agreement was to be paid on the policy, and which is all that she is entitled to receive from the partnership; that the sum now on deposit in this court being part of the personal assets of the estate of the partnership, was, upon the payment of the insurance money to the widow of the deceased partner, to go to the surviving partner, and that the defendant Alfred being the surviving partner, such sum belongs to him, and should be directed to be paid to him.
The solicitors of both parties have filed a stipulation in this cause, as follows:
"1. Existence of agreements dated July, 1906, copies of which are attached respectively to bill of complaint and to statement of claim of Elizabeth B. Holcombe.
"2. Existence of equal partnership between Charles H. Holcombe and Alfred G. Holcombe since July, 1906, to March 5th, 1919.
"3. Death of Charles H. Holcombe March 5th, 1919.
 "4. Inventory on March 5th, 1919 ..................... $3,800.00
 Holcombe Bros., active account March 5th,
 1919, Trenton Trust Co. ........................ 503.30
 Holcombe Bros., special account March 5th,
 1919, Trenton Trust Co. ........................ 500.00
 Bellisfield note, March 5th, 1919, due April
 1st, 1919 ...................................... 3,200.00

"On or about April 1st, 1919, Bellisfield paid $500 on account of principal of his note and $40.50 discount for *Page 26 
three months upon the renewal note into the hands of Elizabeth B. Holcombe, who, on April 7th, 1919, paid to the defendant Alfred G. Holcombe $270.25, being half of the Bellisfield payment. On April 9th, 1919, by checks signed by the defendant Alfred G. Holcombe in the name of the partnership, the special account in the Trenton Trust and Safe Deposit Company was divided equally between Elizabeth B. Holcombe and Alfred G. Holcombe, each receiving a check for $250.
"Mr. Alfred G. Holcombe made no demand for the return of half of the payment on the note, $270.25, after Mrs. Elizabeth B. Holcombe so divided the $540.50, although he did at once demand that the Bellisfield note, then amounting to $2,700, should be paid to him in full.
"The one bank account and Bellisfield payment were divided without consulting counsel."
And the following additional facts were stipulated:
"1. The signatories to the agreement, a copy of which is attached to the bill of complaint, are Emma E. Holcombe, Charles H. Holcombe and Alfred G. Holcombe. The signatories to the agreement, a copy of which is attached to the statement of claim of Elizabeth B. Holcombe, are Elizabeth B. Holcombe, Charles H. Holcombe and Alfred G. Holcombe.
"2. Elizabeth B. Holcombe came into possession of the note for $2,700 by requesting Floyd E. Bellisfield, the purchaser of the State street store, to make the note to her, because it was her husband, Charles Holcombe, who, in his lifetime, attended to the sale of the State street store and to the collection of installments and renewal of notes, having the same in his possession at his death."
In construing a contract the cardinal rule is to ascertain the intention of the parties. If more than one construction is possible, surrounding circumstances may be considered; and if the intention is doubtful or obscure, the most fair and reasonable construction, imposing the least hardship on either of the contracting parties, should be adopted. Int. Signal Co. v.Marconi, c., Co., 89 N.J. Eq. 319; affirmed for the reasons given in the court below, 90 N.J. Eq. 271. *Page 27 
In the construction of covenants it is a settled rule, both at law and in equity, to look to the evident meaning of the parties.Coster v. Monroe Manufacturing Co., 2 N.J. Eq. 467; and (atp. 478) it is held that the intention is to be carried into effect.
It is a primary canon of construction of contracts that all the rules are subordinate to the leading principle that the intention of the parties is to be collected from the entire instrument and must prevail, unless it is subversive of some established rule of law; and that in the case of ambiguity the court may resort to proof of the circumstances under which the contract was made, to aid in ascertaining such intention. United Boxboard and PaperCo. v. McEwan Bros. Co., 76 Atl. Rep. 550, 553.
In Hope v. Maccabees, 91 N.J. Law 148, the court of errors and appeals held that although it is a province of the court to construe a written instrument, yet, where the effect of such instrument depends not merely on its construction and meaning, but upon collateral facts in pais and extrinsic circumstances, the inferences of fact to be drawn from them are to be left to the jury. That means, of course, that where the cause is heard by the chancellor, the trier of fact as well as of law, that extrinsic evidence is admissible before him in aid of the situation and the better to enable him to arrive at a proper result. But where the agreement speaks for itself, that is, where from its four corners its true intent and meaning are to be gathered, parole evidence is inadmissible.
The agreement in this case is plain and unambiguous and speaks for itself. It evinces the clear intention of Alfred G. and Charles H. Holcombe, brothers, who were in the retail drug trade, to provide for their respective wives in case of the death of either of them, and they so expressed it. The agreement is that if either Alfred or Charles should die in the lifetime of the other, before the maturity of the policy (when both, if living, were to be paid), that the widow of the deceased brother, if living, should have the insurance money, or if dead, his executors, administrators or assigns; and it was further provided that it was their purpose and *Page 28 
intent that the contract of insurance for the benefit of their respective wives should be in lieu of any and all claim in and to the business belonging to the brothers, which their respective wives might claim or be entitled to subsequent to the death of either of them. This is the whole of the contract in the recitals. Then follows the consideration clause, which acknowledges the receipt of one dollar, and provides that in further consideration of the keeping in force of the policy of insurance, the agreement witnesses — (1) that on the death of Charles H. Holcombe an account shall be stated of the stock, c., of Holcombe Brothers, as of the date of his death, and that any sum remaining to the credit of Charles, as shown by the account, should thereupon be paid to the "party of the first part;" and (2) that the party of the first part assigns and releases to Alfred G. Holcombe any and all claim to the business, c., of Holcombe Brothers, accruing to said partnership, subsequent to the decease of Charles H. Holcombe.
Now, after reciting that the contract is made for the purpose of providing for the widow of either brother in case of his death, to them, in the operative part of the agreement, provide that on the death of one of the brothers only, namely, Charles, an account shall be stated and the sum remaining to his credit paid to the party of the first part, gives undue advantage to his widow, one that is not given to the widow of Alfred; and the second clause of the operative part, that the party of the first part assigns and releases unto Alfred G. Holcombe all interest in the partnership as of the date of the death of Charles, so far as it applies to the widow of Charles carries out the provision in section 1, that in case of his death his widow shall receive payment of the sum standing to his credit at the date of his demise, but so far as it applies to Emma, the wife of Alfred, it is apparently unequal * * * it is ambiguous.
Charles died, and his widow, under the operative clause, would be entitled at the time of his death to the money remaining to his credit at that time, in addition to the insurance, all of which latter has been paid to her. If Alfred *Page 29 
had died there would have been no accounting and nothing would have been paid to his widow saving the insurance. And no question could have been raised upon the face of this agreement. Therefore, the operative part of the agreement is absolutely inconsistent with, and repugnant to, the avowed intention of the parties expressed in the recitals of the agreement that the insurance was negotiated for the purpose of providing for their respective widows in case of the death of either of them, and for the further purpose that the contract of insurance for the benefit of the wives should be in lieu of any and all claim in and to the estate of the partnership. This agreement, so stated, is perfectly equable, and equality is equity. The operative part is ambiguous.
In Speer v. Speer, 14 N.J. Eq. 240, it was held that the beneficent design of the statute of distributions in securing to all the children an equal portion of the inheritance is in accordance with the spirit and genius of our institutions; that equality is equity, and it is the duty of the court especially to see that its purpose shall not be frustrated, except upon the most satisfactory grounds and upon the clearest evidence. Of course we are not dealing with the statute of distributions, nor are we dealing with evidence. It has already been held that evidence is not permissible for the purpose of showing what was the intention of the parties to this agreement or agreements. There being no doubt about it, the contract speaks for itself. But, the case is applicable in that the design of the agreement is to secure equality, and that intention must be upheld.
A case very like the present one in principle is that of Exparte Dawes, 17 Q.B.D. (1886) 275 (Eng. Ct. Appeals), wherein Lord Escher, master of the rolls, said (at p. 286), that the deed must be construed as it stands, and by nothing else; and that there are three rules applicable to the construction of instruments of writing; that if the recitals are clear and the operative part is ambiguous, the recitals govern the construction; and that if the recitals are ambiguous and the operative part is clear, the operative part must prevail; and if both the recitals and the operative part are clear, but *Page 30 
they are inconsistent with each other, the operative part is to be preferred. Lord Justice Lindsay, in his opinion, said that the recitals show what was meant by the operative part of the deed, what was intended to be conveyed and what was in the contemplation of the parties, and that being so, there is no ambiguity about it, looking at the case simply as a matter of construction, without saying what might be the result of an application to rectify the deed, and that on a true construction of the document the words (in the operative part) are surplusage. And Lord Justice Lopes in his opinion stated again the rules regarding the recital and the operative parts of deeds the same as the master of the rolls.
Now, the master of the rolls, in his opinion (at p. 187), said that to construe words in a certain way, so far from the assignment being "in pursuance of the agreement," it would not be, but in pursuance of some other agreement, therefore, so far from the operative part of the deed being clear, it seemed to him as ambiguous as it well could be; clearly, that the case fell under the first of the three rules; that the recitals were perfectly clear and unambiguous; the operative part ambiguous; therefore, the recitals should prevail.
And so it is in this agreement. As already said, it recites a perfectly clear, unambiguous and equable undertaking.
Now, notice that, following the recitals, the consideration clause acknowledges the receipt of one dollar and then says: "and in the consideration, further, of the keeping in force of the said policy of insurance hereinbefore referred to, by the said party of the second part, this agreement witnesseth," c. What it witnesses, is, that on the death of Charles an account shall be stated and his widow paid the amount to his credit, and that the party of the first part, whoever that may be, whether Emma E. or Elizabeth B., and, in this instance, doubtless the latter, should assign and relinquish her claim to Alfred. Now, it is impossible that in consideration further of the keeping in force of the policy of insurance, that an account should be taken of the interest of Charles in the firm, and the amount standing to his credit be paid to his widow. It would seem, as in the DawesCase, to refer *Page 31 
to some other agreement. It cannot be referred to the recitals in this agreement, as it could not help or harm them in the least — it is totally foreign to the recitals.
The operative part of the agreement before me is therefore ambiguous, that is, it cannot be said to what it really refers; certainly it cannot refer to the recitals of the agreement which preceded it, and it seems to be as ambiguous as the operative part was in the Dawes Case. The result is, it must be treated as surplusage; and the construction of the instrument according to the true intent and meaning of the parties must be rested upon the recitals part only.
This result would lead to the conclusion that Mrs. Elizabeth B. Holcombe, who held Bellisfield's note, is entitled to the amount of it, were it not for the fact that it is part of the estate of the partners, as will hereafter appear.
It may well be that these parties endeavored to construe this contract themselves, and to hold that a statement should be made showing assets between Alfred G. Holcombe and the widow of Charles H. Holcombe, for the purpose of carrying out the agreement. But the recitals being clear and the true intent and meaning of the parties apparent on their face, the construction is one for the court as matter of law. And, as seen, the so-called operative part must be disregarded as surplusage. In this situation there is nothing for the parties to construe. They cannot make the law but must follow it. Mockler v. Long,5 N.J. Mis. R. 937. These payments being exchanged between themselves are voluntary and cannot be recovered back. SeeKoewing v. West Orange, 89 N.J. Law 539; Loesser ManufacturingCo. v. Schmid, 100 N.J. Law 123.
Where terms, used in a written contract, are themselves susceptible of definite legal construction, the fact that the parties have adopted and acted on an erroneous construction of the contract will not preclude them as to transactions not clear, from insisting on the proper and true legal construction.Stewart ads. Lehigh Valley Railroad Co., 37 N.J. Law 53, 55.
And the practical construction placed upon the contract, as shown by the conduct of the parties and the partial *Page 32 
performance, is a clue to their intention, where more than one construction of the language is permissible. Basic Iron Ore Co.
v. Dahlke, 103 N.J. Law 635.
A practical construction of a contract becomes evidential only when the whole writing is ambiguous, and where it appears that the acts done under it were those of the very parties thereto, and were done in pursuance, and by reason, of it. From payments made by the parties to each other, there was no attempted construction of this contract, in my judgment; or, if there were, it would be inefficacious. The real attempt, as I take it, was to settle the estate of the partnership, which remained unsettled. There was no demand for an accounting by Elizabeth B. Holcombe under the agreement. Neither her statement of claim nor the answer of Alfred G. Holcombe asserts it; although the figures stated in the stipulation appear to show the standing of the firm at the time of the decease of Charles H. Holcombe. That would have to be the case in any event. That the parties were settling the partnership affairs between Alfred G. Holcombe, the surviving partner, and Elizabeth B. Holcombe, the widow of the decased partner, is shown in the stipulation. It states that on or about April 1st, 1919, Bellisfield paid $500 on account of the note, and $40.50 discount upon the renewal note in the hands of Elizabeth, who, on April 7th, paid to Alfred G. $270.25, which was half of the amount of this very note, of which the fund in court represents the remainder. She is therefore committed to an assertion that the note belonged equally to Alfred G. and herself. Alfred himself, on April 9th, 1919, paid to Elizabeth B. one-half of the special account of the late firm. The firm still appears to have standing to its credit the $503.30 which was in their active account. And Alfred seems committed to the payment of half of that amount to Elizabeth. However, that is a matter between Alfred, surviving partner, and Elizabeth as the representative of the deceased partner, and is not in issue here. Charles does not appear to have left a will. At least, Mrs. Elizabeth B. Holcombe is not asserted to have proved any, nor is it proved at all. Nor has she taken out letters of administration on his estate. This, so far as anything *Page 33 
appears in the case. The parties have apparently treated with each other without reference to a legal representative of the estate of Charles; nor do I say that in the circumstances it was necessary. That question is not before me.
It is admitted in the supplemental stipulation that the late Charles H. Holcombe negotiated the sale for the parties and received the cash and securities, among them a note from the purchaser, Bellisfield. It was found among Charles' effects by his widow, who secured the renewal of the $3,200 note, taking one for $2,700 in her own name. It clearly belonged, not to the estate of Charles, but to the partnership, as part of the purchase price of the sale which had not been settled between the partners; and that made half of the amount of the note due to Alfred and half to Charles' estate, which in this case is represented by his widow; and the note and the amount of it had nothing whatever to do with the insurance under the agreement. This being so, Elizabeth B. Holcombe is entitled to one-half of the money in court, which was due under the note made in her name; and, the form of the transaction not being questioned by her brother-in-law, Alfred G. Holcombe, he is entitled to the other half of the amount in court.