12 N.J. Super. 207 (1951)
79 A.2d 331
LOUIS J. MANFREDI, PLAINTIFF,
v.
FRANK MANFREDI, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 21, 1951.
*209 Mr. W. Louis Bossle, attorney for plaintiff.
Mr. Irvin M. Lichtenstein (Mr. Mark Marritz, of counsel), attorney for defendants Frank Manfredi and Jennie Manfredi.
Mr. John R. DiMona, attorney for defendant Renato Canzanese.
HANEMAN, J.S.C.
The defendants seek to dismiss the plaintiff's complaint on the grounds that it does not state a claim upon which relief can be granted, and seek as well a more definite statement of the complaint. The latter motion for a more definite statement was orally determined at the time of argument. The former motion, therefore, requires present consideration.
Plaintiff alleges that on March 1, 1950, the defendants Manfredi, then being indebted to him in the sum of $25,000, executed an agreement, the pertinent portions of which read as follows:
"Whereas, the party of the Second Part loaned to the parties of the First Part the sum of $25,000.00, which was used in the erection and construction of said building, which the parties of the First Part promised to repay to the party of the Second Part at the time of the completion of said building; and
Whereas, the parties of the First Part have been unable to repay said loan and are desirous of securing the payment thereof to the party of the Second Part, and the party of the Second Part in consideration thereof has agreed not to enforce the payment of said debt until said buildings and lands shall have been sold;
NOW, THEREFORE, in consideration of the premises and of the mutual rights and benefits arising herefrom to each of the parties hereto, it is mutually agreed:
1. That to the extent of said sum of $25,000.00 the party of the Second Part has an interest in the lands and premises hereinafter described and the buildings thereon erected prior to the equity of the Parties of the First Part therein."
*210 The agreement contained a description of certain lands and premises which the plaintiff alleges, by reason of mutual mistake, failed to encompass all of the lands intended to be covered. The plaintiff, by his complaint, conceives that the agreement was an "equitable mortgage" and a lien upon the property therein described. The complaint as well alleges that implicit in the terms of said "equitable mortgage" was the duty of the defendants Manfredi to make all reasonable efforts to sell the buildings therein described, and that failing in said duty, the payment of said debt might be enforced within a reasonable time after the date of the agreement. The complaint further alleges that the defendant Canzanese, at the time that the defendants Manfredi executed and delivered to him a mortgage on said premises, had actual knowledge of the existence of the plaintiff's "equitable mortgage" and constructive knowledge of said "equitable mortgage," which was recorded the day prior to the recording of the said Canzanese mortgage. Plaintiff now demands relief as follows: (1) reformation of his "equitable mortgage" to include lands not therein described, and (2) a foreclosure of said "equitable mortgage."
The defendants Manfredi allege that there is no absolute debt, but merely a conditional or contingent debt, and that the plaintiff agreed not to enforce the payment of the debt until the lands and premises were sold.
The gist of their motion is that the agreement which the said defendants Manfredi executed did not constitute an "equitable mortgage" on the premises therein described; that the defendants Manfredi were not obliged to sell the realty involved within a reasonable time after the date of said agreement, and that the plaintiff is not entitled to a foreclosure and sale of the property involved.
It becomes first necessary, therefore, to determine the nature of the instrument which is before us.
In J.W. Pierson Co. v. Freeman, 113 N.J. Eq. 268, 166 A. 121 (E. & A. 1933), the court said as follows:
"If a transaction resolves itself into a security, whatever may be its form and whatever name the parties may choose to give it, it is, *211 in equity, a mortgage. If a deed or contract, lacking the characteristics of a common-law mortgage, is used for the purpose of pledging real property, or some interest therein, as security for a debt or obligation, and with the intention that it shall have effect as a mortgage, equity will give effect to the intention of the parties. Such is an equitable mortgage."
In Rutherford National Bank v. H.R. Bogle & Co., 114 N.J. Eq. 571, 169 A. 180 (Ch. 1933), the court said as follows:
"The whole doctrine of equitable liens or mortgages is founded upon that cardinal maxim of equity which regards as done that which has been agreed to be, and ought to have been, done. To dedicate property, or to agree to do so, to a particular purpose or debt is regarded in equity as creating an equitable lien thereon in favor of him for whom such dedication is made. This wholesome equitable principle is one of wide, if not universal recognition and application."
"The form which an agreement shall take in order to create an equitable lien or mortgage is quite immaterial, for equity looks at the final intent and purpose rather than at the form. If an intent to give, charge or pledge property, real or personal, as security for an obligation appears, and the property or thing intended to be given, charged or pledged is sufficiently described or identified, then the equitable lien or mortgage will follow as of course."
See also Metropolitan Life Ins. Co. v. Poliakoff, 123 N.J. Eq. 524, 198 A. 852 (Ch. 1938); Feldman v. Warshawsky, 122 N.J. Eq. 596, 196 A. 205 (Ch. 1937); reversed on other grounds, 125 N.J. Eq. 19, 4 A.2d 84 (E. & A. 1938); 4 Pomeroy 691; also 53 C.J.S. 843; 33 Am. Jur. 427.
The form of the agreement is unimportant. The important element is the question whether the parties intended to give, charge or pledge the realty described in the agreement as security for an obligation.
It becomes necessary, therefore, to construe the agreement in toto. The rules applicable to the construction of an instrument in writing which contains recitals are as follows: (1) that if the recitals are clear and the operative part is ambiguous, the recitals shall govern; (2) if the recitals are ambiguous and the operative part is clear, the operative part must prevail; and (3) if both the recitals and the operative part are clear but inconsistent with each other, the *212 operative part is to be preferred. Bellisfield v. Holcombe, 102 N.J. Eq. 20, 139 A. 817 (Ch. 1927).
Employing this rule in the case sub judice, it is apparent that the parties, for the securing of the payment of a pre-existing debt and the postponement of the payment thereof, pledged the realty involved and created an equitable mortgage.
The next question to be considered is whether, under the circumstances, the debt referred to in the instrument upon which suit is brought may be said to be payable within a reasonable time after its execution or to be payable only when the realty therein described was sold.
Although counsel have been unable to discover adjudicated cases in the State of New Jersey, the general rule is that where the postponement of such payment is contingent upon the sale by the debtor of specified property, the debt is payable within a reasonable time.
In Nunez v. Dautel, 22 L.Ed. 161 (U.S. Sup. Ct. 1873), Mr. Justice Swayne said as follows:
"The paper was clearly not a promissory note, because it was not payable at a time certain, and it was not such a due-bill as the law regards as in effect a promissory note for the same reason. Story Pr. Notes, § 27; Salinas v. Wright, 11 Tex. 575; Ex parte Tootell, 4 Ves. 372. It was made up of the following particulars: it acknowledged the amount specified, consisting of principal and interest, to be due to the plaintiff for four years and six months' services, and promised to pay him that sum, with interest, as soon as the crop could be sold, or the money could be raised from any other source.
No time having been specified within which the crop should be sold or the money raised otherwise, the law annexed as an incident that one or the other should be done within reasonable time, and that the sum admitted to be due should be paid accordingly. Payment was not conditional to the extent of depending wholly and finally upon the alternatives mentioned. The stipulations secured to the defendants a reasonable amount of time within which to procure in one mode or the other the means necessary to meet the liability. Upon the occurrence of either of the events named or the lapse of such time, the debt became due. It could not have been the intention of the parties that if the crop were destroyed, or from any other cause could never be sold, and the defendants could not procure the money from any other source, the debt should never be paid."
See also 148 A.L.R. 1075.
*213 Generally, when an instrument purports to be payable upon the happening of a certain event, the question which must precede any inquiry as to the time of payment, assuming that the event has not happened, is whether the instrument imports an absolute liability. If the event is one that is certain to happen, the mere promise to pay may import such an absolute liability. If, however, the event is one wholly or partially within the promisor's control and therefore not certain to happen, the absolute character of the liability cannot be inferred from the mere promise, but must be sought in the other terms of the instrument or in extrinsic circumstances. The real significance of the provision that an instrument is payable upon the happening of an event that is wholly or partially within the control of the promisor is apparent after it has been determined whether the debt is an absolute one. If the instrument, read in the light of the surrounding circumstances, shows that the debt is an absolute one, it is reasonable to suppose that the parties intended that a reasonable effort should be made to cause the event to happen within a reasonable time.
There should be but little room for dispute that a debt which is already in existence does not or cannot change its character or absoluteness into a conditional obligation merely because a subsequent agreement between the parties postpones the payment of the debt until the happening of some future specific contingency. For this reason, it would appear that the question whether the debt is absolute or conditional  a matter of prime importance where the provision for payment upon a contingency forms a part of an original contract or obligation  should be but a mere incident of discussion where the agreement to pay upon a future event relates to a debt that was incurred by reason of a pre-existing contract or arrangement between the parties. 12 Am. Jur. 856, Contracts; 13 C.J., p. 684; 17 C.J.S. 1066; 148 A.L.R. 1075.
The debt here arose out of a separate contract or arrangement which antedated the agreement setting the future event as determining the time for payment. The transaction under which the debt arose and that sought to be enforced had no *214 immediate or contemporaneous connection. The agreement fixing the time for payment upon the sale of the realty is not a part of or coincidental with the original contract between the parties out of which the obligation itself arose.
At the time the instrument was executed there was, from the allegations of the complaint and the recitals of the instrument, an absolute, unconditional pre-existing debt. The payment of the debt was postponed until the happening of a contingent event, i.e., the sale of the described realty, by an agreement separate, distinct and subsequent to that under which the debt arose. It was, under these circumstances, implicit that the sale would occur within a reasonable time. If this were not so, the debtor could postpone the maturity of the debt indefinitely and so deprive the creditor of his right of action for a similar period. Such a result would do violence to the intentions of the parties. Glazer v. Klughaupt, 116 N.J.L. 507, 185 A. 8 (E. & A. 1936).
The motion is, for the above reasons, denied.