27 N.J. Super. 76 (1953)
98 A.2d 698
GEORGE W. EISENHARDT, PLAINTIFF,
v.
CHARLES P.W. SCHMIDT AND MARGARETTA E. SCHMIDT, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided June 26, 1953.
*79 Mr. Allen B. Endicott, 3rd, for plaintiff (Messrs. Endicott, Dowling and Endicott, attorneys).
Mr. Robert N. McAllister for defendants (Messrs. Coulomb, McAllister and Hunter, attorneys).
HANEMAN, J.S.C.
The plaintiff herein seeks a judgment against the defendants under N.J.S. 3A:24-44 and seeks to impress a lien on the premises described in the complaint to the extent of the money allegedly due him by virtue of N.J.S. 3A:24-16.
The plaintiff alleges that he loaned Clara V. Schmidt the sum of $1,174.24 on or about October 9, 1947 for the purpose of making certain payments then due from her to *80 the Home Owners Loan Corporation on account of mortgage payments on premises owned by her and known as 1420 Madison Avenue, Venice Park, New Jersey.
Clara V. Schmidt died intestate on May 16, 1952, leaving as her sole surviving heirs and next of kin the defendants herein.
Defendants not only deny the transaction alleged by the plaintiff, but assert that in any event a memorandum upon which plaintiff's case is bottomed is testamentary in nature, and not having been executed with the solemnity required of wills (N.J.S. 3A:3-2) is unenforceable.
At the time of the trial, objection was made by defendants, and sustained, to the proffer of oral testimony by the plaintiff concerning the alleged loan and conversations with the deceased, and similar objection was made, but overruled, to the introduction of the following memorandum, which was in the handwriting of and signed by the deceased Clara V. Schmidt:
"This is to certify that I, Clara V. Schmidt, paid the Home Owners Loan, 2 Park Avenue, New York City, the sum of $1174.24. Said sum was advanced by George Eisenhardt, 135 S. Florida Avenue, Atlantic City, N.J.
In case of my death, the sum of $1174.24, plus 6% interest from October 9th, 1947, is to be paid to George Eisenhardt out of the property sale of 1420 Madison Avenue, Venice Park, N.J. on which he paid the money."
These objections were founded upon N.J.S. 2A:81-2. As far as here pertinent, said statute reads as follows:
"When one party to any civil action is a lunatic suing or defending by guardian or when one party sues or is sued in a representative capacity, no other party thereto may testify as to any transaction with or statement by the lunatic while of sound mind or with or by the decedent, * * *."
The proffered oral testimony violated the interdiction of the cited statute. In a suit against an heir under N.J.S. 3A:24-44 (Heirs and Devisees Act), the defendant is sued in a representative capacity. Joss v. Mohn, 55 *81 N.J.L. 407 (Sup. Ct. 1893); Hunt v. Hendrickson, 97 N.J.L. 180 (E. & A. 1921); Ludlow v. Dwyer, 3 N.J. Super. 1 (App. Div. 1949).
One of the tests laid down for the ascertainment of what constitutes a transaction with a deceased is "to inquire whether, in case the witness testified falsely, the deceased could contradict it to his own knowledge." The proof of the deceased's written statements does not offend against the provisions of said statute, since they could not be denied by her if she were living, and hence are admissible. It follows that the memorandum was properly admitted. Metropolitan Life Ins. Co. v. Lodzinski, 122 N.J. Eq. 404 (E. & A. 1937); Bruen v. Spannhake, 118 N.J. Eq. 134 (Ch. 1935); Hollingsworth v. Lederer, 125 N.J. Eq. 193 (E. & A. 1938).
Before undertaking the ascertainment of whether the above referred to memorandum transgresses the rule requiring an instrument to be executed as provided by N.J.S. 3A:3-2 in order to effectively and enforceably create a testamentary disposition of property, it becomes necessary to analyze the particular instrument to ascertain whether it is of a testamentary nature.
It is fundamental that the intent of the parties to an instrument should be sought for in aid of an interpretation thereof.
The first paragraph of the memorandum is tantamount to a recital. The rules applicable to the construction of an instrument in writing which contains recitals are as follows: (1) that if the recitals are clear and the operative part is ambiguous, the recitals shall govern; (2) if the recitals are ambiguous and the operative part is clear, the operative part must prevail; and (3) if both the recitals and the operative part are clear but inconsistent with each other, the operative part is to be preferred. Bellisfield v. Holcombe, 102 N.J. Eq. 20, 139 A. 817 (Ch. 1927).
Although inartistically and inartificially worded, the instrument acknowledges a loan by the plaintiff to the deceased, and the word "advanced" connotes "loaned." In *82 ordinary parlance, the word "advanced" as here used means "loaned." In the sense here employed it did not connote a gift.
"ADVANCE  as a noun. A word of wide significance, which depends for its meaning, upon the context or surrounding circumstances."
"As LOAN  While, in its strictly etymological significance, the word does not necessarily imply a loan, it has been so frequently used as its equivalent that it may be said that the word, whether taken according to its meaning in law or according to its meaning in common usage, includes loans as well as gifts."
2 C.J.S., pages 496 and 497.
"A loan has been properly defined an advancement of money upon a contract or stipulation express or implied, to repay at some future day."
Freeman adsm. Brittin, 17 N.J.L. 191, at page 231 (Sup. Ct. 1839).
"ADVANCE  5. A furnishing of something before an equivalent is received (as money or goods) towards a capital or stock, or on loan; * * * In the case of an advance, as distinguished from an advancement, there arises the relation of debtor and creditor, or else the advance is in the nature of an absolute gift, * * *."
Webster's New International Dictionary (2d ed.).
The memorandum constitutes a definite promise to pay within a reasonable time after the death of Clara V. Schmidt, with the further agreement that in the event such payment is not made prior to her death, the real estate therein described was to be security for said payment. It denotes a definite intent and promise to pay. The debt is absolute. Having so determined, it becomes necessary to ascertain the time when such payment is due. In the event payment is here not made prior to the death of Clara V. Schmidt, the instrument directs such payment to be made out of the sale of the premises for the payment of the mortgage encumbering which the loan was made. The sale is contingent and not certain to occur, although the death of Clara V. Schmidt is *83 an event certain to occur. It is logical to presume that the parties intended that a reasonable effort should be made to cause the event to occur upon the happening of which payment was to be made, within a reasonable time.
In Nunez v. Dautel, 19 Wall. 560, 22 L.Ed. 161 (U.S. Sup. Ct. 1873), the court said as follows:
"The paper was clearly not a promissory note, because it was not payable at a time certain, and it was not such a due-bill as the law regards as in effect a promissory note for the same reason. Story Pr. Notes, sec. 27; Salinas v. Wright, 11 Tex. [572] 575; Ex parte Tootell, 4 Ves. 372. It was made up of the following particulars: it acknowledged the amount specified, consisting of principal and interest, to be due to the plaintiff for four years and six months' services, and promised to pay him that sum, with interest, as soon as the crop could be sold, or the money could be raised from any other source. No time having been specified within which the crop should be sold or the money raised otherwise, the law annexed as an incident that one or the other should be done within reasonable time, and that the sum admitted to be due should be paid accordingly. Payment was not conditional to the extent of depending wholly and finally upon the alternatives mentioned. The stipulations secured to the defendants a reasonable amount of time within which to procure in one mode or the other the means necessary to meet the liability. Upon the occurrence of either of the events named or the lapse of such time, the debt became due. It could not have been the intention of the parties that if the crop were destroyed, or from any other cause could never be sold, and the defendants could not procure the money from any other source, the debt should never be paid."
In Manfredi v. Manfredi, 12 N.J. Super. 207 (Ch. Div. 1951), the court said:
"Generally, when an instrument purports to be payable upon the happening of a certain event, the question which must precede any inquiry as to the time of payment, assuming that the event has not happened, is whether the instrument imports an absolute liability. If the event is one that is certain to happen, the mere promise to pay may import such an absolute liability. If, however, the event is one wholly or partially within the promisor's control and therefore not certain to happen, the absolute character of the liability cannot be inferred from the mere promise, but must be sought in the other terms of the instrument or in extrinsic circumstances. The real significance of the provision that an instrument is payable upon the happening of an event that is wholly or partially within the control of the promisor is apparent after *84 it has been determined whether the debt is an absolute one. If the instrument, read in the light of the surrounding circumstances, shows that the debt is an absolute one, it is reasonable to suppose that the parties intended that a reasonable effort should be made to cause the event to happen within a reasonable time.
"There should be but little room for dispute that a debt which is already in existence does not or cannot change its character or absoluteness into a conditional obligation merely because a subsequent agreement between the parties postpones the payment of the debt until the happening of some future specific contingency. For this reason, it would appear that the question whether the debt is absolute or conditional  a matter of prime importance where the provision for payment upon a contingency forms a part of an original contract or obligation  should be but a mere incident of discussion where the agreement to pay upon a future event relates to a debt that was incurred by reason of a pre-existing contract or arrangement between the parties. 12 Am. Jur. 856, Contracts; 13 C.J., p. 684; 17 C.J.S., Contracts, § 503, p. 1066; 148 A.L.R. 1075."
The transaction resolved itself into an admission of a debt and the granting of security for the repayment thereof  a pledge of the realty for the payment of charges against which the money was borrowed. The form of the agreement is unimportant. The important element is whether the parties intended to give, charge or pledge the realty described in the memorandum as security for the payment of the obligation. Manfredi v. Manfredi, supra.
No time having been specified within which 1420 Madison Avenue, Venice Park, New Jersey, should be sold, and payment of the debt not being conditioned to the extent of depending wholly and finally upon the sale of said property, the heirs (representatives) of Clara V. Schmidt were thereby granted a reasonable time within which to procure either from the sale of the said premises or otherwise, sufficient funds to pay the debt of the plaintiff. Upon either the sale of the premises or the lapse of a reasonable time succeeding the death of Clara V. Schmidt, the debt became due. Until such payment, the debt constituted an equitable lien on said premises.
The defendants not only deny the transaction alleged by the plaintiff, but state that in any event the above memorandum *85 is testamentary in nature, and not having been executed with the solemnity required for the execution of wills by the applicable statute, N.J.S. 3A:3-2, that the said memorandum is unenforceable.
As authority for this position they cite American University v. Conover, 115 N.J.L. 468 (E. & A. 1935).
The general and majority rule in a preponderatingly impressive number of jurisdictions is that an otherwise valid contractual instrument is not reduced to the status of a testamentary disposition merely because it provides, in substance, that payment or performance shall be due at, or at a designated time after, the death of the party promising such payment or performance. 1 A.L.R.2d at page 1197.
The above cited American University v. Conover would seem to place New Jersey among the small minority of states which hold to the contrary. In American University v. Conover case, supra, the court said as follows:
"In addition to this, there was testimony in the instant case that the University had written the donor accepting the gift."
And again:
"In the instant case, we conclude that the gift represented by the note is testamentary in its character. The donor retained absolute control and dominion over her estate during her life, and transfer of the dominion of the amount of the note was not to take place for one year after her death. We conclude that the undertaking constituted a testamentary disposition of the amount involved, and was invalid as not being made as required by the statute of wills." (Underscoring mine)
The confusion existing concerning what constitutes a testamentary disposition in New Jersey apparently arises in the use by that court of the words "gift" and "contract" interchangeably in said opinion in concluding what the relationship was between the plaintiff and the defendants' testatrix. It is not clear whether the court there concluded that the payment of $5,000 was an attempted testamentary disposition in the nature of a post mortem gift, and therefore *86 unenforceable, or whether it was a valid and existing contract, unenforceable because the payment required thereunder was to be made upon the death of the payor.
Further light may be shed upon the intent of the court by examining the cases cited by it to sustain its final conclusion. The facts in connection with these several cases are as follows:
In Stevenson v. Earl, 65 N.J. Eq. 721 (E. & A. 1903), the court had before it a deposit agreement between the Pennsylvania Railroad Company and one Walter Earl, Jr., which provided in part "that in the event of my death all deposits standing to my credit in said savings fund, and all interest due thereon, shall be paid to my wife." The said Walter Earl, Jr. deposited the sum of $500 in the said account and gave his wife the passbook, "stating to her that here was the money, and that if he died it should go to her, * * *." Thereafter he made subsequent deposits and withdrawals, so that on the date of his death there remained the sum of $1,578 on deposit. The court, in its holding that the wife was not entitled to the balance on deposit at the time of her husband's death, concluded "such a gift, it seems to us is purely testamentary in its character."
In Schlicher v. Keeler, 67 N.J. Eq. 635 (E. & A. 1904), the court had before it a case in which a deceased grantor had, prior to his death, delivered a deed in escrow conveying certain property to his son. The deed was to be delivered to the grantee upon the grantor's death. The transaction concerned itself with a gift of a parcel of real estate, the delivery of the deed to which was to be made only upon the donor's death.
In Robeson v. Duncan, 74 N.J. Eq. 745 (Ch. 1908), the court stated, in the following language, the principle of the invalidity of a testamentary disposition other than by will:
"This doctrine applies to the disposition in his lifetime of property which will be in the donor at the time of his death, the tradition to take place at or after death, * * *."
*87 In Reed v. Bonner, 91 N.J.L. 712 (E. & A. 1917), the opinion exhibits that the facts were as follows:
"The plaintiff sues as executor of Sarah A.G. Skinner to recover $5,000 money loaned. On the trial he proved that the testatrix had given the defendant a check for the amount; that he had paid interest to her on that amount; * * *. The defendant, as a witness in his own behalf, testified that he told the plaintiff that Mrs. Skinner had given him the $5,000 with the understanding that he was to pay interest on it until the time of her death, `and at which time the $5,000 was to be mine;' * * *."
The court there said:
"But if the whole statement is considered, as defendant insists it should be, it appears that it is undisputed that the defendant received the money of the testatrix upon an obligation to pay interest thereon until her death, and that so far from its being a present gift, the money was not to be his until her death; in short, that it was in the nature of a testamentary disposition. No such disposition is valid unless there is a compliance with the requirements of the statute of wills. A sufficient test of the rights of the parties is to be found in the fact that the defendant does not claim to have had title during the life of the testatrix."
In United States Trust Co. v. Giveans, 97 N.J.L. 265 (E. & A. 1921), the court had before it the following instrument:
"We, Jane C. Wrigley and Mary A. Giveans, have on this day purchased a safe made by the American Safe Company of Anderson, Indiana. Number of safe is 7169, under the following agreement: Upon the death of either one the safe and personal contents becomes the property of the other, cash, bank books and bonds, &c.
 JANE C. WRIGLEY (Seal)
 MARY E. GIVEANS (Seal)
 Signed, sealed and delivered
 in the presence of
 SUSAN I. GLUFF
 ROBERT W. PATTERSON."
The court there said as follows:
"For the respondent it is argued that the agreement made between Mrs. Wrigley and the defendant is not a contract founded upon a consideration, but this is not so, because upon the death *88 of either party to it the safe and contents were to be the property of the other; each in consideration of acquiring the other's property undertook to give up hers at death.
"But, nevertheless, the document could not operate to transfer any title to the contents of the safe to the defendant, for the obvious reason that it was a contract in the nature of a will; it was a contract which attempts to dispose of property after death, after the manner of a will, without being executed as a testament in conformity with the statute of wills. Stevenson v. Earl, 65 N.J. Eq. 721; Schlicher v. Keeler, 67 Id. 635; McCullough v. Forrest, 84 Id. 101; Hunt v. Naylor, Id. 646.
"Nor was it a gift, inter vivos, which requires passing of the donor's title at once to the donee absolutely and irrevocably. Mathews v. Hoagland, 48 N.J. Eq. 455. Nor did the document operate to create a trust in favor of defendant (Stevenson v. Earl, supra), because the would-be donor did not part with her interest and put the property out of her power in any way."
It is to be noted that although in this decision the court held that the transfer of the title of "personal contents, * * * cash, bankbooks, bonds, &c." was not enforceable, it being in the nature of a testamentary disposition, that the agreement concerning the creation of a joint estate in the safe itself, the rights to which arose under the contract of purchase, were enforceable and title vested in the survivor. The court here again had before it an attempted gift.
In Johnson v. Savings Investment, etc., Co., 110 N.J. Eq. 466 (E. & A. 1932), the question involved was whether the deceased for whom the plaintiff was administratrix had made a valid gift inter vivos. The court there said:
"The sole question in dispute depends upon whether the donor had declared an intention to and had stripped herself of all ownership and dominion over the subject-matter of the gift. The proofs indicate that Mrs. Jones retained for her life the right to enjoy the fund, and that after her death that which remained was to go to Betty Harrigan."
In Trenton Saving Fund Society v. Wythman, 106 N.J. Eq. 93 (E. & A. 1929), the court had before it an action seeking a declaratory judgment of a statute incorporating the plaintiff and granting the following specific charter power to it:
*89 "That a book shall be kept at the office of the society in which every depositor shall be at liberty to appoint some person or persons to whom, in the event of his or her death, the money shall be paid, if not otherwise disposed of by will, and all payments made by said society, to such persons so appointed shall be a full discharge to said society."
The sole question discussed in the opinion was the formality required of an instrument to pass title to personalty in 1844 upon the death of the owner of said personalty. The question involved again concerned a testamentary gift of personalty.
It is to be noted that in each of the foregoing cases relied upon by the court in American University v. Conover, the relationship which was being considered was that of a gift and not a contract, except perhaps in the case of United States Trust Co. v. Giveans, which concerns itself with a combination of contract and gift. In this latter case there were in the particular instrument severable provisions. The post mortem provisions concerning the title and ownership of the safe were contractual obligations and the provisions concerning the title to the contents of the safe were testamentary dispositions or post mortem gifts.
The words "testamentary disposition" connote or denote a gift rather than a contract. A contract does not take on a testamentary character merely because performance by one party is postponed until his death. This is not a testamentary disposition, but rather a post mortem performance.
In the case sub judice there was a valid, valuable and sufficient consideration passing from the plaintiff to Clara V. Schmidt for her agreement to repay the sum of $1,174.24 with interest at 6%. The relationship of debtor and creditor subsisted during the lifetime of the parties and only the time of payment was deferred. The contract was not one in the nature of a will.
The instrument here involved was not like a will, ambulatory, operative and revocable during the lifetime of Clara V. Schmidt, but rather since it had been delivered to the plaintiff, was irrevocable and gave rise to a contractual right in praesenti.
*90 In the case of Michaels v. Donato, 4 N.J. Super. 570 (Ch. Div. 1949), the court, in analyzing a similar situation, aptly said as follows:
"`The confusion results from the attempt to attach to the transaction characteristics of both a will and a contract. These characteristics are, however, entirely distinct. A contract operates immediately to create a property interest in the premises while a will is revocable, or, more properly speaking, inoperative or ambulatory until the death of the testator, at which time it operates to create a property interest in the beneficiary.' Yale Law Journal, vol. 27, part 1, p. 542; 57 Am. Jur., Wills, sec. 15, Page 48. The undertaking of a party under a contract is made in consideration of something to be paid or done by or on behalf of the other party, so that the obligation to and the right to require performance are reciprocal. A contract creates a present, enforceable and binding right over which the promisor has no control without the consent of the promisee, while a testamentary disposition operates prospectively. 57 Am. Jur., Wills, sec. 40, Page 67. An instrument which does not pass any interest until after the death of the maker is essentially a will. But not every instrument which provides for performance at or after death is testamentary in character. If the instrument creates a right in the promisee before the death of the testator, it is a contract. `A will is dispositive; a contract promissory. A will is gratuitous; while a contract * * * requires consideration.' 1 Page, Wills, Lifetime Ed., sec. 83, Page 179. `There is nothing in the statute of wills that prevents the creation by contract of a bona fide equitable interest in property and its enforcement after the death of a contracting party, even though the date of death is agreed upon as the time for transfer of the legal title.' Legro v. Kelley, 311 Mass. 674, 42 N.E.2d 836 (Sup. Ct. Mass. 1942).
"The great weight of authority is to the effect that `an otherwise sufficient contractual instrument, based on consideration, by which the promisor agrees, in substance, that ownership of or a designated right in property owned by him shall pass to the promisee at the promisor's death, is not rendered testamentary in character merely because of a provision naming the death of the promisor as the time for the transfer of the legal title to the promisee. If the instrument does invest him, in praesenti, with an irrevocable contractual interest in the property, it is not testamentary.' Note, 1 A.L.R.2d 1207."
Therefore, since the instrument here involved vested the plaintiff at the time of the delivery to him with an irrevocable right to payment as therein set forth, arising out of a contract, the consideration for which was valid and *91 valuable, it is here held that the payment directed to be made after death is not a testamentary disposition and therefore not violative of the pertinent provision of the statute of wills.
Judgment will be entered for the plaintiff.