BERGEN COUNTY WELFARE BOARD, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF, v. KATHERINE NAACKE, DEFENDANT.

Bergen County Court
Law Division

Decided October 26, 1962.

*Mr. Walter W. Gehringer* for the plaintiff (*Messrs. Winne and Banta,* attorneys).

*Mr. Michael J. Ferrara* for Joseph Perillo, title successor to the defendant (*Messrs. Ferrara and Guez,* attorneys).

BROWN, J. C. C. The plaintiff, Bergen County Welfare Board, claims a lien on certain real property as to which Katherine Naacke, the nominal defendant, once had title. The plaintiff seeks a writ of execution on the analogy of a "lien by judgment" as provided in *N. J. S. A.* 44:7–14.

Mrs. Naacke, having applied for old age assistance from the plaintiff, executed an "Agreement to Reimburse" on April 1, 1938. The defendant owned the premises in question at that time. From the date of the agreement until her death on November 15, 1959, she continued to receive the welfare board's financial aid notwithstanding that the property went out of her ownership on August 22, 1952. On that date it was conveyed by her to one Nicolo Bati. The latter conveyed to the present owner, Joseph Perillo, in 1956.

Mr. Perillo, admittedly a *bona fide* purchaser for value, resists the lien claim on several grounds.

First, he contends that no lien attached until the welfare board, on November 30, 1959, filed the certificate of assist-

ance mentioned in *N. J. S. A.* 44:7–15. Such an interdependence was not established by the language of the statutory law in its 1938 form. The provision for a lien was afforded by *N. J. S. A.* 44:7–14 which then made a pledge of the recipient's real property a condition to granting assistance

> "\* \* \* and the total amount of the assistance so granted shall become a lien upon any lands in the ownership of such person, which lien shall have priority over all unrecorded encumbrances."

 The so-called certificate of assistance, specified in *N. J. S. A.* 44:7–15, has nothing to do with generating a realty lien. The certificate (showing the amount of assistance advanced) becomes a "legal claim," when filed, with the force and effect of a personal judgment.

The 1938 version of *N. J. S. A.* 44:7–14 was before the court in *Camden County Welfare Bd. v. Federal Dep. Ins. Co.*, 1 *N. J. Super.* 532 (*Ch. Div.* 1948). Judge (now Justice) Haneman held in that case that the welfare board lien attached at the moment the reimbursement agreement was executed. He found the Legislature to have intended the creation of a lien without the necessity of filing the agreement or a notice thereof in any public office. The subsequent amendment of *N. J. S. A.* 44:7–14 (in 1945), to require filing, is academic in the present instance because the agreement was in fact filed in the office of the Bergen County Clerk on May 6, 1938.

 The welfare board was not simply an assignee of the Naacke assets as Mr. Perillo argues—it was a lienor from the instant of its first advance.

It is the Perillo contention that even though this is so, the lien could not survive the conveyance to Mr. Bati so as to secure advances *thereafter* made to Mrs. Naacke. The rationale in *Camden* does not help here because that real estate remained in the ownership of the old age assistance recipient until her death.

As the court pointed out in the *Camden* case, the welfare board's security interest is not derived from any familiar concept known to the common law or to equity jurisprudence. It is strictly statutory. It springs from and is measured by a legislative pronouncement.

When Mrs. Naacke transferred her title in 1952, the lien language of *N. J. S. A.* 44:7–14 had been amended by *L. 1945, c. 273, p. 808, sec. 1,* to read as follows:

"Upon making a grant of old age assistance the county welfare board shall file with the clerk of the court of common pleas or register of deeds and mortgages, in any county, a notice of the above mentioned agreement to reimburse, which notice as of the date of such filing, shall have the same effect as a lien by judgment, and any real estate or lands in which the recipient or spouse has a title or interest, shall thereupon become charged and encumbered with a lien for old age assistance granted the recipient and said notice shall have priority over all unrecorded encumbrances."

By the 1945 revision of language, requiring public notice, the Legislature recognized the need for bringing the welfare board security device into better alignment with orthodox lien law. Any doubt as to constitutionality, because no public record had been required, was thus removed by the Legislature, according to the comment in the *Camden* opinion, 1 *N. J. Super.*, at *p.* 547. By specific direction the lien was for the first time made to depend upon filing, with the further provision that a security right would first arise "as of the date of such filing."

It should be inferred from the foregoing change in the statute that the welfare board's lien was no longer to be considered as being *sui generis*. If it was thus equated with a normal lien, as to the necessity of public notice to effect its origin, it should be regarded as being conventional in terms of its duration.

In *Carlo v. Okonite-Callender Cable Co.*, 3 *N. J.* 253, (1949), the Supreme Court said, at *page* 265 of the opinion:

"It is well established * * * that statutes are to be construed with reference to the common law and that a statute

which is claimed to impose a duty or establish a right which was not recognized by the common law will be strictly interpreted to avoid such asserted change. To effectuate any change in the common law the legislative intent to do so must be clearly and plainly expressed."

To declare that the welfare board, in this case, has a kind of lien which can attach to property in the ownership of someone other than the debtor—and who is, indeed, a *bona fide* purchaser from the debtor's vendee—is to venture down a new path in the law. Whether or not the Legislature has the power to lead a court in that direction should be debated vigorously. But nothing appearing in this statute shows any intention on its part to do so.

Intent to make a welfare board lien on real property of the recipient of old age assistance survive the latter's conveyance of title to another, so that advances thereafter made are secured by such property, should be a manifest intent. I do not find it to be expressed in *N. J. S. A.* 44:7–14. If it is not there by any evident intendment, it cannot be put there by the direction in *R. S.* 44:7–2 for liberal construction of the Old Age Assistance Act.

█ The plaintiff is not bound by the compromise arrangement referred to by Mr. Perillo. Administration of the old age assistance program is the responsibility of the State Division of Old Age Assistance according to *N. J. S. A.* 44:7–6. Without the Division's approval, a proposed settlement of a lien claim would be ineffectual.

█ For the foregoing reasons it is hereby determined that the plaintiff has a lien on the premises described in the notice of motion for writ of execution to the extent of the total amount of the assistance granted to Katherine Naacke until August 22, 1952. The motion is granted to that extent. It is in all other respects denied.