96 N.J. Super. 472 (1967)
233 A.2d 389
BERGEN COUNTY WELFARE BOARD, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
RUDOLPH V. GROSS AND GEORGETTE R. GROSS, HIS WIFE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided August 9, 1967.
*473 Mr. Ronald J. Picinich for plaintiff.
Messrs. Keer, Booth, Buermann & Bate for defendants.
LORA, J.S.C.
This is an action for the establishment and foreclosure of a Welfare Board lien under N.J.S.A. 44:7-14 and Chapter 219 of the Laws of 1931. The case was tried principally on facts stipulated by the parties.
On March 1, 1935 Minnie Searing applied to plaintiff Bergen County Welfare Board for old age relief. Upon the granting of said relief she executed on March 25, 1935 an agreement to reimburse which was filed in the Bergen County Clerk's office on April 5, 1935 under File Number 132, Old Age Relief Liens, an unindexed file. Pursuant to the agreement, plaintiff paid to Minnie Searing $180 in 1935, $216 in 1936, and $36 during the first two months of 1937. Her case was discontinued by plaintiff as of March 1, 1937.
Minnie Searing was the record owner of the premises at 329 Moore Avenue, Leonia, New Jersey, on March 25, 1935, the date of the agreement to reimburse. The property had been conveyed in 1919 to Hudson Searing and Minnie Searing, his wife. Mrs. Searing, as widow, on December 26, 1934, mortgaged the premises to the Home owners Loan Corporation for the sum of $3,683.95. By deed dated June 1, 1937, and recorded June 18, 1937, Minnie Searing conveyed title to the premises to her son Lawrence D. Rieper, Sr. The deed contained no revenue stamps and the conveyance was subject to the first mortgage held by the Home Owners Loan Corporation.
Minnie Searing reapplied to the plaintiff for relief on April 25, 1952. From May 1, 1952 to the end of 1952 she was paid $1,189.75 and in 1953 she was paid $1,850.25. In 1954 the plaintiff paid her $1,858.50, and in 1955 $200 was paid on account of her funeral expenses. Prior to obtaining this relief, Mrs. Searing executed another agreement to reimburse dated May 1, 1952 and this document was *474 filed on June 5, 1952 in the Bergen County Clerk's office under File Number 7109 under Reimbursement Agreements, Book L to Z, which contains agreements to reimburse filed from August 1, 1936 up to December 31, 1960. Entries in this book are made alphabetically by last name of the welfare recipient without regard to filing date.
Minnie Searing received $432 in 1935-1937; $5,098.50 from May 1, 1952 to 1955. The Bergen County Welfare Board has been reimbursed the sum of $430.20 by the Metropolitan Life Insurance Company and $87.50 as a return of advancement from the Brightside Sanitorium. Hence the plaintiff is claiming the sum of $5,012.80 as being due and owing to it. A certificate of assistance granted, dated January 11, 1955, was filed February 1, 1955 as Number 7109 stating the amount to have been granted from March 1, 1935 to December 31, 1954 to be $5,330.50 (obviously this did not include the $200 funeral expense). This certificate was attached to the notice of agreement to reimburse on file as Number 7109.
In 1953 Rieper died and his will was admitted to probate on June 4 of that year. On June 23, 1953 Paul H. Rieper and Catherine Rieper, his wife, and John H. Rieper conveyed the premises to Lawrence D. Rieper. John, Paul and Lawrence Rieper were the beneficiaries and devisees under the will of Lawrence D. Rieper, Sr.
On October 11, 1955 Lawrence D. Rieper and Erika K. Rieper, his wife, and John H. Rieper and Edith Rieper, his wife, conveyed the premises to John Goodro and Elaine Goodro, his wife, by warranty deed.
Thereafter, on January 28, 1960, the Goodros conveyed the premises by warranty deed to Douglas H. Pennoyer, Jr. On June 11, 1962 plaintiff sent a letter to Pennoyer which recited the fact that plaintiff had a lien on the property amounting to $5,012.80. Westervelt and Leslie, Esquires, Pennoyer's attorneys, replied to the board by a letter dated June 14, 1962 in which they took the position that the lien was invalid. On October 30, 1962 Pennoyer conveyed *475 the premises to the defendants Rudolph V. Gross and Georgette R. Gross, his wife, by bargain and sale deed.
Plaintiff contends that if defendants had properly searched the records they would have ascertained the existence of the alleged lien filed in 1935 under File Number 132 and would have been put upon inquiry to the board and thereby would have learned of the reimbursement agreement of May 1, 1952 and the amount of advances thereunder.
At the trial herein the witness Bernita Vienckowski, a title searcher and president of a title abstract company, who was produced as an expert by the defendants, testified his search of the records disclosed there were no revenue stamps on the June 23, 1953 deed to Lawrence D. Rieper; that the October 11, 1955 deed to the Goodros bore $16.50 worth of revenue stamps; the January 28, 1960 deed, Goodros to Pennoyer, which was subject to a mortgage balance, $4.95 revenue stamps, and the October 30, 1962 deed, Pennoyer to Gross, $24.75 revenue stamps.
There is no proof that the Grosses had actual knowledge of plaintiff's alleged lien or that Pennoyer had any such knowledge when he took title. (Plaintiff's letter to Pennoyer was written almost a year and a half after he had taken title from the Goodros.) Then too, there likewise is no proof that the Goodros had any actual knowledge of the claim.
Vienckowski testified a title searcher treats a reimbursement agreement as a judgment and hence searches all owners in a chain of title for a period of twenty years. If there is a conveyance out prior to the judgment period, he would not search it. He also stated it is not possible to search for reimbursement agreements filed prior to 1936 since there is no record, that is, no index of reimbursement agreements prior to 1936. Any reimbursement agreements or notices filed after a conveyance by an owner would be ignored by a title searcher, just as a judgment after a conveyance would be ignored.
*476 When asked to assume the facts set forth in the stipulation of facts herein, and that he was searching the title in 1962 for a 1962 purchaser, the witness answered he would not have ascertained the existence of the reimbursement agreement for the reasons given above.
I have very briefly reviewed the testimony of the witness Vienckowski, to which I give full credence, but reach my conclusions hereon without the necessity of utilizing the same.
The court considers first the payments made pursuant to the reimbursement agreement of 1935, which covered the period from March 25, 1935 to March 1, 1937. The statute in effect in 1935 at the time the agreement was executed was Chapter 219 of the Laws of 1931. That statute, the predecessor of the present statute, provided:
"* * * 7. If any county bureau of old age relief shall deem it necessary, it may, with the consent of the division of old age relief, require as a condition to the grant or continuance of relief in any case, that all or any part of the property, either real or personal, of a person applying for relief be transferred to said county upon the order of the court of common pleas. Such property shall be managed by said county bureau of old age relief under the direction of the board of chosen freeholders, which shall pay the net income thereof to such person; said bureau of old age relief under the direction of board of chosen freeholders shall have power to sell, lease or transfer such property or defend and prosecute all [just] suits concerning it and to pay all just claims against it and do all things necessary for the protection, preservation, and management thereof. * * *"
On March 25, 1935 Minnie Searing signed an "Agreement to Reimburse" which recited:
"Now these presents, witnesseth, that in pursuance and in lieu of the above seventh section of Chapter 219 of the Laws of 1931, that I, Minnie Searing, party of the first part, do hereby agree to reimburse the said County of Bergen, by the sale or disposal of any and all assets, both real and personal, of which I may be possessed, or to which I may acquire title.
I do further agree that I will not transfer any of such assets by sale or otherwise except with the consent of the said Bergen County Welfare Board.
*477 It is further understood and agreed by and between the parties hereto that this agreement shall not become a lien upon the real estate of the party of the first part while it is occupied by the widow or widower as the case may be * * *."
Plaintiff concedes that Chapter 219 of the Laws of 1931 does not give the Welfare Board a statutory lien. It contends, however, that the agreement to reimburse evidenced an intent on the part of Mrs. Searing to pledge her property as security for the advancement of old age assistance which created an equitable lien in favor of the Welfare Board. Manfredi v. Manfredi, 12 N.J. Super. 207, 211 (Ch. Div. 1951); Eisenhardt v. Schmidt, 27 N.J. Super. 76, 84 (Ch. Div. 1953). As holder of an equitable lien, plaintiff's argument continues, the board is entitled to prevail against defendants, the current owners of the property, unless said defendants were bona fide purchasers.
Defendants dispute plaintiff's contention that the agreement to reimburse created an equitable lien. In the alternative, defendants further contend that if such a lien was created, they are bona fide purchasers. Contrary to plaintiff's assertion that the filing of the agreement constituted constructive notice to any subsequent purchaser, defendants state that agreements filed pursuant to the 1931 statute do not constitute constructive notice.
In any event, it is clear that any right which plaintiff may assert against defendants' property must rest upon its claim of an equitable lien. It is the opinion of this court, however, that the 1935 agreement to reimburse did not create a lien, equitable or otherwise. As was stated in Temple v. Clinton Trust Company, 1 N.J. 219, 226 (1948), an equitable lien
"* * * is neither a jus ad rem nor a jus in re. It is simply `a right of a special nature over the thing, which constitutes a charge or encumbrance upon the thing, so that the very thing itself may be proceeded against in an equitable action, and either sold or sequestered under a judicial decree, and its proceeds in the one case, or its rents and profits in the other, applied upon the demand of the party in whose favor the lien exists.' [Citation omitted.] The doctrine *478 of equitable liens furnishes ground for the specific remedies which equity confers, operating upon particular identified property, instead of the general pecuniary recoveries granted by courts of law. These liens may be created by express executory contracts relating to specific property then existing, or property to be afterward acquired; and sometimes they are raised ex aequo et bono, according to the dictates of equity and conscience, as where a contract of reimbursement could be implied at law and enforced by the action of assumpsit, or in certain cases where contribution or reimbursement is enforceable in equity, including those involving fraud and innocent mistake." (emphasis added)
The court, in addition, is mindful of the fact that:
"The form of the agreement is unimportant. The important element is the question whether the parties intended to give, charge or pledge the realty described in the agreement as security for an obligation." Manfredi v. Manfredi, 12 N.J. Super. 207, 211 (Ch. Div. 1951)
It is fundamental however that the property against which an equitable lien is asserted be described with particularity in the agreement. As was stated in 4 Pomeroy, Equity Jurisprudence (5th ed.), sec. 1234, p. 695:
"The theory of equitable liens has its ultimate foundation, therefore, in contracts, express or implied, which either deal with or in some manner relate to specific property, such as a tract of land, particular chattels or securities, a certain fund, and the like." (emphasis added)
And as further stated by the same commentator at sec. 1235, p. 696:
"The doctrine may be stated in its most general form, that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands not only of the original contractor but of his heirs, administrators, executors, voluntary assignees, and purchasers or encumbrancers with notice. * * * In order, however, that a lien may arise in pursuance of this doctrine, the agreement must deal *479 with some particular property, either by identifying it, or by so describing it that it can be identified, and must indicate with sufficient clearance and intent that the property so described, or rendered capable of identification, is to be held, given, or transferred as security for the obligation." (emphasis added)
Thus, the court conceives that the property subject to the lien must be definitely described and that a blanket reference to all property, real and personal, is insufficient to accomplish this purpose. See also Tiffany, Real Property (3d ed. 1939), sec. 1563, where it is stated:
"In order that an equitable lien be thus created on land by agreement, it is necessary that the land itself be specified in the instrument, and that the intention clearly appear that the land is to be security for the performance of the obligation."
The issue of equitable lien in similar circumstances was also discussed in Camden County Welfare Board v. Federal Deposit Insurance Corporation, 1 N.J. Super. 532, 545 (Ch. Div. 1948):
"There are generally three kinds of liens recognized in our judicial system, (1) common law; (2) equitable, and (3) statutory. There is, of course, no common law lien under which the plaintiff could claim any right of priority for the repayment of the monies advanced by it out of the real estate originally owned by Annie Vandegrift and subsequently by Edward H. Vandegrift, nor is the plaintiff entitled to an equitable lien by reason of its advancement. It becomes apparent, therefore, that the lien, if any, to which plaintiff was entitled must be a statutory lien and must arise as a result of the foregoing cited section of the Revised Statutes." (emphasis added)
While the court is mindful that Justice, then Judge, Haneman was discussing a reimbursement agreement made pursuant to the current statute, R.S. 44:7-14, rather than one made pursuant to Chapter 219, Laws of 1931, the court is of the opinion that the principle expressed there is applicable to the case sub judice. In the Camden case, as in the present matter, a reimbursement agreement was signed and assistance granted, and the court concluded that the only relief to which plaintiff was entitled was that afforded by *480 the statute. The court specifically rejected the existence of an equitable or common law lien.
This principle was reiterated in Bergen County Welfare Board v. Naacke, 77 N.J. Super. 37, 40 (Cty. Ct. 1962), where the court said:
"As the court pointed out in the Camden case, the welfare board's security interest is not derived from any familiar concept known to the common law or to equity jurisprudence. It is strictly statutory. It springs from and is measured by a legislative pronouncement."
Thus, in light of all of the above, the court concludes that the plaintiff has no lien on the defendants' premises growing out of the 1935 reimbursement agreement and the first series of payments.
The court now turns to the second series of payments which were made upon Mrs. Searing's renewed application in 1952. From May 1, 1952 to 1955 plaintiff made payments to Mrs. Searing pursuant to the new agreement to reimburse executed by her on May 1, 1952. This agreement provided:
"WITNESSETH, that the said recipient having made application to the party of the second part for a grant of Old Age Assistance, and said grant having been approved by or on behalf of the party of the second part contingent upon the execution of these presents, and the spouse of the recipient being directly benefited by said grant of assistance, in accordance with the Statute, does also join herein. The purpose of this agreement is to reimburse the party of the second part for assistance granted the recipient and in consideration thereof:
The party of the first part does hereby jointly and severally agree to pledge, assign or convey all or any part of their real or personal property, wherever found, to the party of the second part, and to refrain from selling, transferring, assigning or otherwise disposing of same except upon consent of the party of the second part in writing so to do, and by these presents well and truly bind their heirs, executors, administrators and assigns to the faithful performance of this covenant hereinbefore set forth.
And the spouse of the recipient does hereby release any present or future right of dower or curtesy in the real estate of the recipient.
IT IS FURTHER AGREED by the parties hereto that the party of the second part shall execute a notice of this agreement to reimburse, and said notice, when filed with the Register of Deeds and *481 Mortgages or Clerk of the Court of Common Pleas of any county, shall have the same force and effect as a judgment at law, and shall thenceforth remain as a lien on the property of the parties of the first part, wherever found, until satisfied, with priority over all unrecorded encumbrances."
This agreement was made pursuant to R.S. 44:7-14 which reads as follows:
"(a) Every county welfare board shall require, as a condition to granting assistance in any case, that all or any part of the property, either real or personal, of a person applying for old age assistance, be pledged to said county welfare board as a guaranty for the reimbursement of the funds so granted as old age assistance pursuant to the provisions of this chapter. The county welfare board shall take from each applicant a properly acknowledged agreement to reimburse for all advances granted, and pursuant to such agreement, said applicant shall assign to the welfare board, as collateral security for such advances, all or any part of his personal property as the board shall specify.
The agreement to reimburse shall provide that the filing of notice thereof as hereinafter provided, is to have the same force and effect as a judgment of the County Court, law division, of the county. It shall contain therein a release of dower or curtesy, as the case may be, of the spouse of the recipient of old age assistance, and the spouse shall agree to reimburse the county welfare board for all advances made to the recipient. Such release and joinder shall be as valid and effectual as if the spouse had joined the recipient in a conveyance of the property to a third person, and the grant of old age assistance, being contingent upon such joinder by the spouse, shall be good and valuable consideration therefor. Old age assistance shall not be granted to any applicant without joinder by the spouse in the agreement to reimburse except upon the showing of good and sufficient cause as the State Division shall by regulation define.
(b) Upon making a grant of old age assistance the county welfare board shall file with the county clerk or register of deeds and mortgages, as the case may be, in any county, a notice of the above mentioned agreement to reimburse, which notice as of the date of such filing shall have the same effect as a lien by judgment of the County Court, law division, of the county, and any real estate or lands in which the recipient or spouse has a title or interest, shall thereupon become charged and encumbered with a lien for old age assistance granted the recipient and said notice shall have priority over all unrecorded encumbrances. No fees or costs shall be paid for filing such notices."
This statute, in contrast to Chapter 219 of the Laws of 1931, explicitly gives the Welfare Board a lien on property in *482 which the recipient or his spouse has an interest. The second agreement to reimburse, however, was executed in 1952 at a time when Mrs. Searing no longer had the property. As to the second series of payments made by plaintiff, therefore, the Court is of the opinion that Bergen County Welfare Board v. Naacke, supra, is dispositive. The court in Naacke, in disposing of a claim similar to that of the plaintiff in the present matter, said at 77 N.J. Super., page 41:
"Intent to make a welfare board lien on real property of the recipient of old age assistance survive the latter's conveyance of title to another, so that advances thereafter made are secured by such property, should be a manifest intent. I do not find it to be expressed in N.J.S.A. 44:7-14. If it is not there by any evident intendment, it cannot be put there by the direction in R.S. 44:7-2, N.J.S.A., for liberal construction of the Old Age Assistance Act."
Thus the court in the matter sub judice concludes that the assistance granted by plaintiff to Minnie Searing pursuant to the 1952 Agreement does not constitute a lien on defendants' property.
In view of all of the foregoing, the court concludes that judgment of no cause for action be entered in favor of the defendants and against the plaintiff. An appropriate form of judgment wil be submitted, consented to as to form, or settled on notice.